UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CALVIN DONTA ANDERSON,

        Plaintiff,

v.

VITAL CARE HEALTH STRATEGIES et al.,

        Defendants.
_____/

Case No. 1:22-cv-492

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. On October 4, 2022, the Court ordered that Plaintiff file an amended pleading on the form provided, pursuant to Local Rule 5.6(a) (ECF No. 9.) Plaintiff filed his first amended complaint on October 19, 2022. (ECF No. 10.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). (ECF No. 4.) That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Stacy, Jackie and Jenkins. Plaintiff's Eighth Amendment and state law claims against Defendants Vital Care Health Strategies, Yacob and Sharwood remain in the case.

## Discussion

**I.  Factual Allegations**

Plaintiff is presently incarcerated in the Kent County Jail in Grand Rapids, Kent County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Vital Care

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Health Strategies[2] and the following individual Defendants: Dr. Nasim Yacob, Nurse Joanne Sharwood, Nurse Stacy Unknown, Nurse Jackie Unknown, and Nurse Unknown Jenkins.

Plaintiff's amended complaint arises out of an alleged lack of medical treatment while in custody at the Kent County Jail. (Compl., ECF No. 10.) On April 30, 2022, Plaintiff was seen by Defendant Jenkins, who told Plaintiff that he had a hernia inside of his stomach. (*Id.*, PageID.37.) Blood was drawn to check Plaintiff's kidney. (*Id.*) Thereafter, on May 6, 2022, Plaintiff was seen by Defendant Yacob. Defendant Yacob also told Plaintiff about the hernia but explained that they do not remove hernias in the Kent County Jail. (*Id.*) At the time, Plaintiff was in pain and his face was swollen. Defendant Yacob told Plaintiff to order aspirin. (*Id.*) Following Plaintiff's visit with Defendant Yacob, Plaintiff encountered Defendant Jackie while Defendant Jackie was passing out medication. (*Id.*) He told Defendant Jackie about his pain. She responded by instructing Plaintiff to submit a medical kite. (*Id.*)

On May 9, 2022, a nurse came to visit Plaintiff to check Plaintiff's blood pressure and the sharp pain in Plaintiff's head and neck. (*Id.*) The following day, May 10, 2022, Plaintiff was using the restroom when he noticed "a lot of blood" in his stool and pain in his stomach. (*Id.*) Plaintiff informed Unit Officer Patton (not a party) of the problem. (*Id.*) Officer Patton responded by calling "health care staff." (*Id.*, PageID.37.) Defendant Sharwood took a stool sample from Plaintiff on May 15, 2022.

---

[2] Although Plaintiff names Vital Care Health Strategies as a defendant, that may be a misspelling of the entity that provides healthcare services at the Kent County Jail. The Kent County website indicates that the jail's healthcare services are "contracted through Vitalcore Correctional Healthcare." https://www.accesskent.com/Sheriff/programs_services.htm (last visited Nov. 14, 2022). But that might not be the correct name of the entity either. *See, e.g.*, https://vitalcorehs.com/ (supporting an inference that the entity name might be VitalCore Health Strategies, last visited Nov. 14, 2022). The Court will refer to the defendant using the name Plaintiff has provided.

Because Plaintiff "was constantly bleeding," Plaintiff informed Officer Laymay (not a party) of his problem. (*Id.*) Officer Laymay again called "healthcare," and Defendant Stacy came to draw Plaintiff's blood. When Plaintiff spoke to Defendant Stacy about his problem, Defendant Stacy told Plaintiff to "put a healthcare kite." (*Id.*) During this time, Plaintiff's family also called "the staff" to complain about Plaintiff's problem and ask that someone examine Plaintiff. (*Id.*)

On May 27, 2022, continuing to have daily pain and blood in his stool, Plaintiff was given an x-ray; Plaintiff was not informed of the outcome. (*Id.*) At an unidentified time, more blood was drawn. Plaintiff continued to have pain in his stomach and blood in his stool. (*Id.*)

On June 5, 2022, Plaintiff was seen by Defendant Sharwood. Defendant Sharwood told Plaintiff that "they" did not know why Plaintiff had so much blood in his stool. (*Id.*, PageID.38.) She told Plaintiff that he should it have examined upon his release from jail on June 5, 2023. To the date he filed his amended complaint, Plaintiff continued to have pain and blood in his stool. (*Id.*)

Plaintiff seeks to have "Vital Care Health and the people listed . . . held accountable." (*Id.*, PageID.39.) He requests compensatory damages, and injunctive relief in the form of a hospital examination and "removal" of the hernia. (*Id.*)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim

to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liberally construing Plaintiff's *pro se* amended complaint, the Court finds that Plaintiff seeks to bring Eighth Amendment claims against all Defendants under § 1983 for deliberate indifference to Plaintiff's serious medical needs, as well as supplemental state law claims for negligence and medical malpractice.

A.      **Eighth Amendment Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018); *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, though the employer of each named Defendant is unclear, "[t]he principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Winkler*, 893 F.3d at 890 (citing *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)). Thus, the Court concludes, at this stage, that each named Defendant is a person acting under color of law for purposes of § 1983.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. It obligates jail authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a jail official is deliberately indifferent to the serious medical needs of an inmate. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to

the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, that "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

8

> mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

9

*See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Objective Component

Plaintiff alleges that he has suffered from ongoing sharp stomach pain and blood in his stool for nearly six months as of the date of Plaintiff's Amended Complaint. Plaintiff claims that Nurse Jenkins reported that Plaintiff had a hernia; Defendant Sharwood also explained that it was unclear why Plaintiff has "so much" blood in his stool. (ECF No. 1, PageID.38.) It is unclear whether the conditions are related. At this stage of the proceedings, Plaintiff's general statements of his symptoms—including sharp stomach pain and ongoing blood in his stool—support an inference that Plaintiff suffered a serious medical need. Therefore, the Court concludes that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### 2. Subjective Component

#### a. Defendant Vital Care Health Strategies

Construed liberally, Plaintiff appears to claim that Vital Care Health Strategies violated his Eighth Amendment constitutional rights through a blanket policy of refusing to "remove hernias" at the Kent County Jail. (ECF No. 10, PageID.37.)

A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Vital Care Health Strategies —can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations).

10

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Plaintiff's complaint indicates that jail medical staff provided Plaintiff with *testing* for his serious medical needs but provided Plaintiff with no *treatment* whatsoever outside of a suggestion that Plaintiff order aspirin. On May 6, 2022, Defendant Yacob informed Plaintiff that "they don't remove hernias" at the Kent County Jail. This comment supports an inference that surgery for hernias would never be provided because of a blanket policy. (ECF No. 10, PageID.37.) This is further supported by Defendant Sharwood's recommendation that Plaintiff have his ongoing health concerns examined upon his release from jail. (*Id.*, PageID.38.) The Court finds that these allegations, taken as true, sufficiently state an Eighth Amendment medical care claim against Vital Care Health Strategies.

### b. Defendant Yacob

Plaintiff alleges that Defendant Yacob was aware that Plaintiff had been diagnosed with a hernia and was experiencing stomach pain but provided Plaintiff with no treatment for his conditions. (ECF No. 10, PageID.37.)

As the Sixth Circuit recently instructed:

> "[A] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm." *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001). A person who is incarcerated need not show "that he was literally ignored by the staff to prove an Eighth Amendment violation, only that his serious medical needs were consciously disregarded." *Id.* (citation and internal quotation marks omitted). For example, "[i]f knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not simply ignored." *Id.* (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611–12 (7th Cir. 2000) (internal quotation marks omitted)). Although Murray received some treatment over the month of January, Dr. Heyd never properly monitored Murray's INR levels. A jury could, therefore, find deliberate indifference even though Murray was not simply ignored.

*Murray v. Dep't of Corr.*, 29 F.4th 779, 788 (6th Cir. 2022). Here too, Plaintiff has set forth sufficient facts to plausibly suggest that Defendant Yacob consciously disregarded Plaintiff's medical needs, refusing treatment in favor of a blanket policy of not providing hernia surgery. As described above, Defendant Yacob's comment to Plaintiff that "they don't remove hernias" in the Kent County Jail, suggests that Defendant Yacob was aware that further treatment was required for Plaintiff's condition. Nonetheless, Defendant Yacob instructed Plaintiff to simply "order aspirin." (ECF No. 10, PageID.37.) Taken as true, the Court concludes that Plaintiff has alleged sufficient facts to set forth a colorable Eighth Amendment claim for denial of medical care against Defendant Yacob.

### c. Defendant Sharwood

Plaintiff alleges that Defendant Sharwood was informed on at least two occasions of Plaintiff's complaints of pain and blood in his stool. On June 5, 2022, Defendant Sharwood examined Plaintiff for the second time, noting that Plaintiff had "so much blood" in his stool but instructed only that Plaintiff have it examined upon his release from jail the following year. (ECF No. 10, PageID.38.) Although Plaintiff has by no means proven deliberate indifference, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that

12

Plaintiff's Eighth Amendment claim against Defendant Sharwood may not be dismissed on initial review. *See, e.g.*, *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, *2 (6th Cir. Sept. 10, 2020); *Estelle*, 429 U.S. at 104 n.10 (citing *Thomas v. Cannon*, 419 U.S. 879 (1979)).

### d.     Defendants Stacy, Jackie and Jenkins

In contrast, Plaintiff's complaint contains no facts to plausibly suggest that Defendants Stacy, Jackie or Jenkins were deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff claims that he was seen by Defendant Jenkins on or about April 30, 2022, at which time Defendant Jenkins told Plaintiff that Plaintiff had a hernia and drew blood to check Plaintiff's kidney. (*Id.*, PageID.37.) Plaintiff was then examined by Defendant Yacob the following week. Plaintiff provides no facts to plausibly suggest that Defendant Jenkins was aware of the need for additional follow-up care let alone that Jenkins consciously disregarded a risk of serious harm to Plaintiff's health.

Plaintiff also provides minimal factual allegations against Defendants Stacy and Jackie. Upon learning of Plaintiff's complaints, Defendants Stacy and Jackie each separately instructed Plaintiff to submit a health care kite. Notably absent from Plaintiff's complaint are any facts to indicate that either Defendant Stacy or Defendant Jackie was aware that the instruction that Plaintiff follow jail protocol for submitting a medical request would result in woefully inadequate care. Accordingly, the Court will dismiss Plaintiff's complaint as against Defendants Jenkins, Jackie, and Stacy.

### B.     State Law Claims

The Court also liberally construes Plaintiff's complaint to bring state law claims for negligence and medical malpractice against the named Defendants.[3] Claims under § 1983 can only

---

[3] In providing the Court with an amended pleadings as ordered (ECF No. 9), Plaintiff appropriately did not include legal arguments or cite to cases or statutes. (ECF No. 10, PageID.37) (instructing

13

be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law therefore fails to state a claim under § 1983.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendants Stacy, Jackie and Jenkins will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Therefore, Plaintiff's state law claims against Defendants

---

that the plaintiff is not to "give any legal arguments or cite any cases or statutes). However, in his original complaint, Plaintiff expressly stated that he was raising claims for state law medical negligence and medical malpractice. (ECF No. 1, PageID.1.) Those claims are not raised as clearly in the amended complaint. Nonetheless, the Court concludes that Plaintiff's intent to raise such claims can be inferred from Plaintiff's statement that he "would like to get compensated for [Defendants'] . . . neglect of their duties." (Am. Compl., ECF No. 10, PageID.39.)

Jenkins, Jackie and Stacy will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

As to Defendants Vital Care Health Strategies, Yacob and Sharwood, because Plaintiff continues to have pending federal claims against them, the Court will exercise supplemental jurisdiction over Plaintiffs state law claims against these remaining Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims against Defendants Stacy, Jackie and Jenkins will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state law claims against Defendants Stacy, Jackie and Jenkins without prejudice. Plaintiff's Eighth Amendment and state law claims against Defendants Vital Care Health Strategies, Yacob and Sharwood remain in the case.

An order consistent with this opinion will be entered.

Dated: November 23, 2022  /s/ Ray Kent
Ray Kent
United States Magistrate Judge

15